GEORGE W. BOUNDS v. A. B. CLARK, et al.

Eastern Section.  February 26, 1927.

No petition for Certiorari was filed.

1. **Principal and agent.  Evidence.  Party receiving proceeds of a sale made through another held to be principal and liable on the contract.**

   In an action to recover damages sustained from being furnished improper materials for a silo where the evidence showed that one of the defendants received from the other the notes and checks given in payment for the materials and used the same to satisfy one of his own debts, held that he was a principal to the transaction and liable for damages caused the complainant.

Appeal from Chancery Court, Knox County; Hon. Chas. Hays Brown, Chancellor.

Affirmed.

Walter D. DeVault, of Knoxville, for appellant.

Jennings, Saxton & Wright, and Green, Webb & Bass, of Knoxville, for appellee.

SNODGRASS, J.  The bill in this cause was filed to collect damages from the defendants for breach of warranty in the sale of a silo. There is and can be no question but what the material, which was sold by sample as of the first class, did not come up to representations.  It was of an inferior quality, so that when the silo was constructed it gave way, and was finally blown down as a result, practically, of its own disintegration, became worthless except for junk. It was tendered back to defendants, each of whom washed their hands of it in disclaiming any responsibility for the loss, but seeking to shift responsibility to the other.

The complainant not only lost the original $455 paid for the silo, but the $50 which it cost him to erect and install it, and also $60 worth of ensilage that rotted and spoiled because of the leakage of air and other incidents due to the rotten and improper material that had been palmed off on him.  The only material question was as to who was responsible for this.

The silo was bought from an agent, Mr. West, who seems to have been entirely innocent of any reprehensible wrongdoing in the matter, and it only became a question as to whom he was agent for.  The

bill was brought against J. H. A. Ross, the Tennessee Silo & Tank Co., a Knoxville corporation, the Dixie Silo & Cutter Co., a Nashville corporation, (the defendant J. H. A. Ross was and is president of this latter corporation) and also against A. B. Clark, each of whom denied any responsibility for the injuries or damages complained of.

Proof was taken and the cause tried before the Chancellor upon the whole record, when he dismissed the bill as against the Tennessee Silo & Tank Co. and gave judgment against the other three defendants, all of whom he held responsible for the full amount claimed. The defendant Clark alone perfected an appeal, and has alone assigned errors. The Chancellor embodied his findings of fact in the decree, as follows:

"This cause came on to be heard on this 10th day of June, 1926, before the Hon. Chas. Hays Brown, Chancellor, upon the original bill and amendment thereto, the answers of all the defendants and all the pleadings and proof in the cause; from all of which it appears to the court and the court finds that complainant, on June 30, 1924, brough through L. F. West as agent the material for a silo twelve feet in diameter and thirty-six feet high, said material being warranted to be first class select stock silo pine, which meant heart pine and clear of knots, the price to be paid $445. The samples exhibited were of that kind, and were free from paint, showing the natural wood. The material finally delivered to complainant was clear of knots and appeared to be good material, but was heavily coated all over with red paint, which concealed its internal condition. Complainant, at an expense of $50 properly constructed the silo from the materials furnished, and filled it with silage in September or October, 1924. Soon afterwards some of the staves in said silo began to buckle inward, causing a lessening of the pressure of the staves against each other all the way around and a leakage of air at all the joints. This resulted in a spoiling of the silage all the way around the silo for several feet above and below each joint, and for several inches inwardly. In this way silage to the value of $60 was spoiled. As a result of the buckling of some of the staves, and the general loosening of the banks in consequence thereof, the silo became insecure, and, during a heavy windstorm blew down, and became a total loss. Many of the staves split open and broke up, and it then appeared that many of them were rotten inside, and that they were very bad material painted over, and their condition thus concealed; and that this rotten condition was the cause of their being weak, and hence buckling under the pressure to which they were necessarily subjected in the silo.

"Before the silo blew down and after the staves began to buckle and the silo began to leak air, complainant called the matter to the attention of Mr. West, the agent who sold him the silo, and was ad-

6 T. A.—26.

vised by Mr. West that the silo material was bad, and that the silo would have to be torn down and new and proper material used in constructing a new one. Complainant for this reason left the scaffold up for this purpose. After it blew down, which occurred shortly thereafter, complainant offered to return to the defendants all the material and kept up this offer and tender in his pleadings and proof, and he demanded from the defendants new material for another silo and the damages suffered by him. All of which the defendants refused.

"It further appears that West was originally employed to sell silos as the agent of defendants Dixie Silo & Cutter Company and J. H. A. Ross. On June 25, 1924, these two defendants sold to defendant A. B. Clark material for twelve silos, which material was then located at the place of business being operated by them in Knoxville, Tennessee. About the same time it was agreed that Mr. West would become the agent of defendant Clark henceforth, and would sell these silos for him. West either made the sale to Bounds as the agent of Clark, or Clark took over and assumed this order from defendant Ross, and undertook to fill it. Thereafter defendant Clark offered to complainant Bounds one of the twelve silos he had recently bought from defendant Ross. Bounds, upon examination, found this material knotty Tennessee pine, not complying with the contract, and he declined to accept it. Defendant Clark learning of this fact on the evening of the same day, took agent West the next day and went to see complainant Bounds, and they then showed him the same sample of clear select pine which West had shown him originally on June 30th, or one just like it, and Clark asked him if he would still accept the silo if material like that were furnished, and he agreed that he would. Clark then stated to him that he, Clark, could and would get it from defendant Ross at Nashville. The material later came, and complainant was notified by telephone by Ross or West that it was here in Knoxville. Bounds came to the city, looked at the material in the car, and seeing that it was clear of knots and appeared to be good, made the cash payment to defendant Ross and executed his notes for the deferred payments. These notes were filled in on a printed form furnished by Ross which had printed in small type the name Dixie Silo & Cutter Company as payee. Ross went back to Nashville that night without seeing Clark, but shortly thereafter mailed to him the cash payment and the notes. Clark paid to agent West his commission on the sale, and later used the note in settling an indebtedness he owed to Ross. The notes got into the hands of the bank as an innocent holder for value without notice, and were paid to the bank by complainant.

"From all of which it further appears to the court that defendants breached their contract with complainant, in that while they sold

and warranted to him select silo stock and first class material, they delivered to him rotten and badly manufactured material wholly unfit for a silo, which fact was known to them, but was unknown to complainant, and could not be discovered by him owing to its heavily painted condition, and they, the said A. B. Clark, J. H. A. Ross and Dixie Silo & Cutter Company, are therefore all liable to complainant; that defendant Ross in making the settlement with complainant was really acting also as agent of defendant Clark, to whom he at once turned over the proceeds of the settlement, the notes having been made payable to Dixie Silo & Cutter Company through convenience or carelessness just as in the original contract the printed form of Tennessee Silo & Tank Company was used, and it appears as the principal for whom West was agent, while he was really the agent of either Ross and Dixie Silo & Cutter Company or Clark. All three of the defendants above mentioned seemed to know that Bounds was not getting good material, and all were engaged in a common enterprise in making and completing the sale for their common benefit. The court is of the opinion, however, that the defendant Tennessee Silo & Tank Company had no part directly in the transaction with complainant, and is not liable to him.

"It is accordingly ordered, adjudged and decreed that the bill be dismissed as to defendant Tennessee Silo & Tank Company, and that complainant be taxed with the costs incident to making said defendant a party; and that complainant have and receive of the defendants A. B. Clark, J. H. A. Ross and Dixie Silo & Cutter Company the sum of $445 being the cost of the silo, $50, being the cost of constructing said silo, and $60, being the value of the silage spoiled, and all the remaining costs of the cause, for all of which execution will issue.

"From the foregoing decree defendants Dixie Silo & Cutter Company and J. H. A. Ross except, and pray an appeal to the next term of the Court of Appeals, which appeal is granted, and said defendants are allowed thirty days in which to perfect said appeal by giving bond.

"In making up the transcript of the record the Clerk and Master will send up in their original form Exhibits 1, 2, 3, 4 and 5 to the deposition of George W. Bounds, the same being identified by the signature of the Chancellor.

"To the action of the court in finding as a fact that L. F. West acted as the agent of the defendant A. B. Clark in the sale of the silo staves involved in this cause, the defendant A. B. Clark excepts and to the action of the court in holding that defendant Clark undertook to fill the order for silo staves or to furnish said staves to the complainant Bounds defendant Clark excepts, and to the action of the court in finding that the defendant Clark showed the complainant

Bounds the same sample which had been shown him by West when West as the agent of the defendant Ross undertook to sell Bounds the silo, the defendant Clark excepts. To the action of the court in finding that the defendant Clark represented to the complainant Bounds that he could and would get silo staves from defendant Ross at Nashville, defendant Clark excepts. To the action of the court in finding that the defendant Clark used the notes which the complainant executed to the defendant Dixie Silo & Cutter Company, in paying his, Clark's indebtedness to Ross, the defendant Clark excepts. To the action of the court in holding that the defendant Clark had or breached any contract with complainant or that he sold complainant a silo or that he warranted the silo which complainant purchased from Dixie Silo & Cutter Company and in holding that defendant Clark had anything to do with the delivery to complainant Bounds of rotten and badly manufactured material and that the condition of said material was known to the defendant Clark and in holding that the defendant Clark is jointly liable with the defendants Ross and Dixie Silo & Cutter Company and in holding that the defendant Ross, in making settlement with complainant for said silo materials was acting as the agent of the defendant Clark and in holding that he turned the proceeds of said settlement over to defendant Clark and in holding that said notes had been made payable to Dixie Silo & Cutter Company through convenience or carelessness the defendant Clark excepts and to the action of the court in holding that defendant Clark had anything to do with said transaction and that he knew that complainant Bounds was not getting good material and that he was engaged in a common enterprise along with the defendants Ross and Dixie Silo & Cutter Company in making said sale, defendant Clark excepts. And to the action of the court in holding him jointly liable with the defendants J. H. A. Ross and Dixie Silo & Cutter Company for the sum of four hundred forty-five dollars ($445) and the sum of fifty dollars, the costs of constructing said silo, and the sum of sixty dollars ($60) the value of the spoiled silage and the costs of the cause the complainant excepts." . . . .

The defendant Clark thereupon moved the court to find the facts contra, and as set out in the decree, beginning at the close of the last paragraph quoted on page 177 of the record, down to the words "In support of his motion" on page 180, which is here referred to, but not set out because of its length. This finding the court declined and, excepting to the decree the defendant Clark, as stated, prayed and perfected an appeal to this court, and his assignment of error is as follows:

"(1) The Chancellor erred in granting the complainant a decree against the defendant, A. B. Clark, for the sum of $445, the

price of said silo, the sum of $50, the cost of its construction, the sum of $60, the value of the spoiled silage, and the costs of the cause.''

''(2) The Chancellor erred in finding as a fact that the agent West made the sale of the silo in question to the complainant Bounds as the agent of Clark, or that Clark took over and assumed said order from defendant Ross, and undertook to fill it, and the Chancellor further erred in finding as a fact that the defendant Clark showed the complainant Bounds any other or different sample on the day after the defendant Clark talked to the defendant Ross over the telephone and notified the said Ross that Bounds had declined to accept a silo out of the materials then on hands in Knoxville, than the sample sent to the defendant. Clark by the defendant Ross for the purpose of being exhibited to the complainant Bounds as being a sample of the kind and character of materials which the defendant Ross was to ship to the complainant Bounds, and in finding that the defendant Clark represented to the complainant Bounds that he, Clark, could and would get the materials in question from the defendant Ross at Nashville.''

''(3) The Chancellor erred in finding that the defendant Clark used the notes given by the complainant Bounds, payable to the Dixie Silo & Cutter Company, in settling an indebtedness he owed to Ross.''

''(4) The Chancellor erred in holding the defendant Clark jointly liable with the defendants Ross and Dixie Silo & Cutter Company, and in holding that he was any party to any alleged warranty as to the quality of said silo stock, and in holding that the defendant Clark knew of the defective condition of said silo materials, and in holding that the defendant Ross, in making the settlement with complainant for said silo, was acting as the agent of defendant Clark, and in holding that the notes taken in payment for said silo, were made payable to Dixie Silo & Cutter Company as a matter of convenience or carelessness, and in holding that the defendant Clark 'seemed to know' that Bounds was not getting good material, and that the defendant Clark was engaged in a common enterprise along with his co-defendants, in making and completing the sale for their common benefit.''

''(5) The Chancellor erred in declining to find the facts as set out in defendant Clark's motion for a further and different finding of fact as embodied in the decree.''

We have carefully examined the record and concur in the conclusions and findings of the Chancellor, except in so far as the same may be modified or amplified hereinafter. The declination of the Chancellor to find the facts petitioned for upon which the fifth assignment of error is predicated, was proper. It was mainly a request to find the evidence, and aside from that any conclusion asked there-

on would have been contrary to the facts found, and would not, we think, have been supported by the evidence.

Defendant Ross was president of the Dixie Silo & Cutter Company, and had a rival in the other defendant corporation in Knoxville, the Tennessee Silo & Tank Company, but evidently the defendant Clark (a resident of Knoxville) had dealt in silos, for it was averred in the answer of Ross and his company that in March, 1923 the latter company bought out the Knoxville corporation, or its assets, and continued its business under the trade name of the Tennessee Silo Company until on or about January, 1925, when it appears the business was sold out to the defendant Clark. These answers averred that at the time of the sale of the silo to complainant, and for a short time prior thereto, the defendant A. B. Clark was an independent jobber, dealing in silos and other similar articles, and, as such jobber, having the exclusive right to sell silos and other similar products manufactured and dealt in by respondent Dixie Silo & Cutter Company within a certain territory, which included Knox county, and at the time was handling similar products dealt in by concerns other than these respondents. It was averred that while Clark was thus operating as an independent dealer the sale was made, and that L. F. West was acting as the agent of defendant Clark, and that at that time neither the said defendant nor the said Clark was the agent of Ross or his company, nor, it was claimed did either the said West or Clark then own any stock in the Dixie Silo & Cutter Company, nor was either of them interested with either Ross or his company in any way except as above set forth. The deposition of Ross was not taken. However, West testified that on June 1, 1924, after the Nashville corporation had bought out the assets of the Knoxville corporation, that he made a contract with Ross to sell his silos and whether or not there had been any negotiations theretofore the contract filed as Exhibit A to complainant's deposition is signed by West (the agent) and complainant, and is dated June 30, 1924. West testified further that while he had been engaged about June 1st, he had not done any actual work for some two weeks; that it was about two weeks before he got started; that sometime toward the latter part of June Mr. Ross and Mr. Clark came up to his father's Sunday afternoon and called him out to the gate, and Mr. Clark being there Ross told him (West) that he wanted him to give up his territory; that he owed Clark some money in their settlement at Nashville, and that he had sold Mr. Clark twelve silos; that Mr. Clark would want this territory in which to dispose of these silos, but that he said: "Mr. Clark will give you the same proposition if you want to work the territory." West told him he would help him out, and said he made a trade with Mr. Clark on a fifteen per cent commission to sell for him, and released Mr. Ross at the time from his contract.

It was afterwards, and on June 30, 1924, that one of these silos Clark bought was sold by West to complainant, on the date mentioned in the contract. There can therefore be no doubt, we think, that the original trade was made by West as the agent of Clark, but later when complainant Bounds looked at the material and was informed that that was the material out of which his silo was to come by those in charge of the stuff, they were notified that he would not receive it. Clark then got busy and with West, as we think the weight of the proof shows, took the same sample and got complainant to reinstate his order, upon the assurance that the material, according to sample, would be gotten from the Nashville concern; and, when gotten from the Nashville concern, or that portion of the same that was not furnished out of the stock belonging to Clark as constituting his twelve silos, or from the old stock purchased from the Knoxville corporation, was all found of even less value confessedly than the Number 2 knotty stuff that existed as a part of the twelve silos sold to Clark. It was, however, heavily coated with read paint, and its defects thus concealed. The shipment was followed up by Ross. Bounds was corralled, and in the absence of Clark was persuaded to take and settle for it by the execution of his notes and a check, and Ross left for Nashville without seeing Clark. All the notes, however, were later returned to Clark, together with the check that had been received, or its proceeds in another check, and Clark later paid the commission to West. While Clark admits this payment to West, he does so in a hedging way, and his explanation of his reception of the notes seeks to impress the idea that they were not held as owner, though he is forced to admit that they were turned over by him later in discharge or settlement of his own obligations, thus receiving a benefit for them as owner which is utterly inconsistent with the theory that he seeks to maintain.

We are satisfied there are other more detailed explanations that might clear the hazy atmosphere in which the transaction was closed, but we are satisfied that whatever form its closing took Clark was a principal, and if he did not authorize the notes and check being drawn as they were, that he ratified this consummation by Ross, who was thus his agent, as well as representing himself and his company, and that, whatever other settlement is due because of the interruption by this suit of the fraud that was attempted to be palmed off on complainant by Ross in this painted material, it should properly come between Clark and Ross and his company; and that Clark, as· well as the others, who are not complaining, should answer to complainant as the Chancellor has found. His decree is affirmed, with costs against appellant and his security, all the assignments of error being overruled.

Portrum and Thompson, JJ., concur.